**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| STERLING STRAUSS, | Civil Action No. 16-5344 (ES) |
| Petitioner, | |
| v. | OPINION |
| PATRICK A. NOGAN, *et al.*, | |
| Respondents. | |

**SALAS, DISTRICT JUDGE**

Petitioner Sterling Strauss ("Petitioner"), a prisoner currently confined at East Jersey State Prison in Rahway, New Jersey, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.E. No. 1). For the reasons explained in this Opinion, the Court denies the Petition and a certificate of appealability.

**I.     Background & Procedural History**

The factual background and procedural history were summarized in part by the New Jersey Superior Court, Appellate Division upon Petitioner's direct appeal.[1]

> At about 9:45 p.m. on October 18, 2006, Velma Williams and her daughter, Raymona Williams, were seated in the front of Velma's Nissan Pathfinder adjacent to Velma's house in Newark. Velma's younger daughter was in the backseat.
>
> Two men walked past the car. According to Raymona, one of the men was thin and the other was heavy, and both were dark-skinned and wearing dark clothing. According to Velma, one of the men was short and wore a dark "hoodie." She estimated that the shorter man was approximately five feet, five inches tall, and was the

---

[1]     The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C.§ 2254(e)(1).

heavier of the two. She estimated the height of the other man to be five feet, six or seven inches.

After walking past, the men returned to the car. The man subsequently identified as Strauss yelled "Boo," which startled Velma and Raymona. He said: "Oh my God. I'm sorry. Did I scare you?" Velma responded that he had scared her. The man walked over to the driver's side, where he apologized again and said that he had thought Velma was his aunt.

As Velma was getting out of the car, the man held out his hand. She thought he wanted to shake hands, but then realized that he had a gun in his left hand. He said: "Get out the car and give me everything you have." She threw her car keys down, screamed, and ran from the car. Her daughters, also screaming, got out of the car and ran. The man jumped into the car and drove away.

By the time the Newark Police arrived at the scene, Velma's car had been in an accident. Prior to getting out, Velma had applied a brake lock, which made the car brakes nonfunctional and unable to stop the car. She identified the car as the police were taking her to the police station.

The following day, Raymona reviewed approximately 200 photographs, which had been computer generated on the basis of her description of a bald, black male, between thirty and forty years old, as the man who drove away with her mother's car. She picked out Strauss's picture and identified him as the carjacker. An officer who was not familiar with the case showed Velma a photo array of six pictures, including Strauss's, sequentially. Velma identified Strauss as the perpetrator. Both Velma and Raymona also identified Strauss while testifying.

On June 22, 2007, Strauss was indicted for carjacking and two related weapons offenses. He was tried before a jury on August 7 and 12, 2008. Although Velma testified that she saw a gun in Strauss's hand, Raymona testified that she did not see a gun. No gun was found in the car. In summation, defense counsel emphasized the lack of physical evidence to support the identifications, inconsistencies in the testimony, and the fact that only Velma testified about a gun. The jury found Strauss guilty of carjacking, but acquitted him of the weapons charges.

Strauss was sentenced on October 27, 2008. The sentencing range for first-degree carjacking is a period of incarceration between ten and thirty years, subject to the eighty-five percent parole ineligibility

> provisions of the No Early Release Act (NERA), *N.J.S.A. 2C:43–7.2*. The carjacking was Strauss's fifth indictable conviction. The judge found aggravating factors three, six, and nine, *N.J.S.A. 2C:44–1(a)(3), (6), and (9)*, with no mitigating factors. He imposed a sentence of incarceration for twenty-two years, subject to NERA and five years of parole supervision upon release, plus the required penalties and assessments.

*State v. Strauss*, Indictment No. 07-06-2710, 2011 WL 2314710, at *1–2 (N.J. Super. Ct. App. Div. June 3, 2011) (footnote omitted).

The Appellate Division affirmed Petitioner's conviction and sentence on June 3, 2011. *Id.* On November 18, 2011, the New Jersey Supreme Court denied Petitioner's petition for certification. *See State v. Strauss*, 34 A.3d 781 (N.J. 2011). On May 25, 2012, Petitioner then filed a *pro se* petition for post-conviction relief ("PCR") with the Superior Court of New Jersey, which denied the PCR petition on the merits. (D.E. Nos. 10-10 & 10-12). The Appellate Division affirmed the lower court's PCR ruling on March 18, 2016. *State v. Strauss*, A-1809-14T3, 2016 WL 1064415, at *3–4 (N.J. Super. Ct. App. Div. Mar. 18, 2016). On July 15, 2016, the New Jersey Supreme Court denied Petitioner's subsequent petition for certification. *State v. Strauss*, 147 A.3d 450 (N.J. 2016).

Petitioner filed the instant petition for habeas relief under § 2254 on August 31, 2016. (D.E. No. 1). Respondents filed their full answer on December 14, 2016. (D.E. No. 10). Petitioner filed a reply on December 30, 2016. (D.E. No. 11). The matter is fully briefed and ready for disposition.

## II.     Legal Standard

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v.*

*Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett,* 559 U.S. 766, 773 (2010).

Where a state court adjudicated a petitioner's federal claim on the merits, a federal court has "no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)). Clearly established law for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Moreover, a federal court reviewing the state court's adjudication under § 2254 (d)(1) must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). Finally, "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

**III.   Analysis**

The Petition raises two grounds for relief: (i) Petitioner's conviction was not supported by sufficient evidence, and therefore, is a violation of his due process rights; and (ii) Petitioner did not receive effective assistance of counsel. (D.E. No. 1-1 at 1–6). For the reasons explained in this section, the Court finds that Petitioner's claims do not warrant federal habeas relief.

4

A.     Ground One

Petitioner raises a Fourteenth Amendment due process claim challenging the state's purported failure to prove every element of the offense of carjacking beyond a reasonable doubt. (*Id.* at 1–3). Under New Jersey's carjacking statute, "a person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle," that person "threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury." N.J. Stat. Ann. § 2C:15-2. Petitioner argues that, because the jury acquitted Petitioner of the gun charges, the only evidence relevant to prove the "threat or fear of bodily injury" was the testimony that the perpetrator told Velma and Raymona Williams to get out of the car and hand over their belongings. (D.E. No. 1-1 at 2). Petitioner argues that the perpetrator's statement, made without any weapon, is insufficient to prove beyond a reasonable doubt that Velma Williams was threatened with or placed in fear of immediate bodily injury. (*See id.*).

This very issue was raised in Petitioner's direct appeal before the Appellate Division and was properly rejected. The Appellate Division, "viewing the State's evidence in its entirety," found that "the jury could have convicted Strauss on the charge of carjacking based on [Velma Williams's and Raymona Williams's] testimony." *Strauss*, 2011 WL 2314710, at *6. The court stated that "although the jury may have concluded that Velma was wrong about the presence of a gun, it could reasonably have concluded from her testimony that [Petitioner] acted so as to lead her to believe that he had a gun." *Id.*

The United States Supreme Court articulated the standard governing a challenge to the sufficiency of the evidence in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court held that a reviewing court must ask itself "whether, after viewing the evidence in the light most favorable

5

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis original). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16; *see also Orban v. Vaughn*, 123 F.3d 727, 731 (3d Cir. 1997).

Here, Petitioner has not demonstrated how Velma Williams's unawareness that the Petitioner possessed a gun negates the fact that she was in fear of immediate bodily injury. As the state court noted, Velma Williams "testified that she screamed [and] was afraid and paranoid . . ." *Strauss*, 2011 WL 2314710, at *6 (internal alteration and quotation marks omitted). Similarly, Raymona Williams testified that "they all started screaming when [Petitioner] told them to get out of the car and give him the keys." *Id.* (internal alteration and quotation marks omitted). The Court agrees with the Appellate Division that, viewing the facts in the light most favorable to the prosecution, the testimony presented at trial could lead any reasonable jury to conclude that Velma Williams and Raymona Williams feared immediate bodily injury if they did not comply with Petitioner's demand. Because the prosecution only needs to prove, beyond a reasonable doubt, that Petitioner "purposely or knowingly [put Velma and Raymona Williams] in fear of [ ] immediate bodily injury," N.J. Stat. Ann. § 2C:15-2, the Appellate Division correctly held that "[a]ctual possession of the gun was not a necessary element of the offense." *Strauss*, 2011 WL 2314710, at *6. The Appellate Division's decision was not contrary to or an unreasonable application of clearly established federal law, and habeas relief is denied on this ground.

**B.    Ground Two**

Petitioner next submits that the state court erred in denying his claim that trial counsel's failure to request a *Wade* hearing constituted ineffective assistance. (D.E. No. 1-1 at 4–6). A *Wade* hearing is a preliminary inquiry to determine the admissibility of an identification. *United*

*States v. Wade*, 388 U.S. 218, 242 (1967). A pretrial identification procedure violates a defendant's due process rights, rendering the identification inadmissible, when the identification is "both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification." *United States v. Burnett*, 773 F.3d 122, 133 (3d Cir. 2014) (citations omitted).

The Supreme Court set forth the standard by which courts must evaluate claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. As such, counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Id.* at 688 & 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential," and judges must consider the facts of the case at the time of counsel's conduct and must make every effort to escape the "distorting effects of hindsight." *Id.* at 689. The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Second, even if counsel's performance is deemed deficient, the *Strickland* test requires the defendant to show prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. With respect to the sequence of the two prongs, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, . . . that course should be followed." *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential": federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

On appeal before the Appellate Division, Petitioner apparently argued that the photo-array procedure used with Velma Williams was unduly suggestive because "the other photos depicted men in white shirts but he was not wearing a white shirt; and in his photo he was looking to the left, but in the other photos the men were looking directly at the camera." *Strauss*, 2016 WL 1064415, at *3. Petitioner also reiterated and emphasized the discrepancy in the victim's trial testimony, arguing that "it was likely any identification of either victim made was inherently unreliable." *Id.* at *2. In denying Petitioner's appeal, the Appellate Division applied the *Manson/Madison* test, which was the governing law at the time Petitioner was convicted. *See id.* at *3. Much like its counterpart under the federal law, the *Manson/Madison* test requires judges to determine whether the out-of-court identification procedures are "impermissibly suggestive" and whether they result in a "very substantial likelihood of irreparable misidentification." *Id.*

8

(quoting *State v. Micelli*, 215 N.J. 284, 291 (2013)). Finding that Petitioner "offered no persuasive evidence to support his apparent claim that the photographic identification procedures were unduly suggestive," the Appellate Division held that Petitioner failed to establish a prima facie case of ineffective assistance of counsel. *Id.*

In his federal habeas petition, however, Petitioner does not challenge any aspect of the police identification procedures, nor does he challenge the Appellate Division's decision regarding the identification procedures. (D.E. No. 1-1 at 4–6). Instead, Petitioner resorts to the residual issue in his appeal that the Appellate Division did not directly address. Specifically, Petitioner now apparently claims that the "clear discrepancy" between Velma Williams's and Raymona Williams's descriptions of the assailant at trial suggests misidentification, thus the trial counsel's failure to request a pre-trial *Wade* hearing amounts to ineffective assistance. (*See* D.E. No. 1-1 at 4–6).

The Court agrees with the Appellate Division that Petitioner's failure to establish unduly suggestive identification procedures is fatal to his claim of ineffective counsel. As the Appellate Division correctly held, Petitioner offered no persuasive evidence, and offers no evidence at all before this Court, to show that the pre-trial identification procedure was unduly suggestive. *Strauss*, 2016 WL 1064415 at *3. As such, Petitioner fails to demonstrate that his trial counsel's decision not to request a *Wade* hearing was erroneous, let alone an error "so serious as to deprive the defendant of a fair trial." *See Strickland*, 466 U.S. at 687.

In addition, even assuming the trial counsel committed an unreasonable error by not requesting a *Wade* hearing, Petitioner makes no attempt to show that he was prejudiced by it. Without establishing that the pre-trial identification process was unduly suggestive, Petitioner failed to demonstrate a reasonable probability that the trial court would have suppressed either

Velma Williams's or Raymona Williams's identifications. *See Kimmelman*, 477 U.S. at 694 ("In order to prevail [on an ineffective-assistance claim,] the defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.") (internal citations omitted). Because Petitioner fails to establish both the "deficiency" and the "prejudice" prongs of the *Strickland* test, the Appellate Division correctly held that Petitioner "failed to establish a prima facie case of ineffective assistance of counsel." *Strauss*, 2016 WL 1064415 at *4.

Finally, Petitioner's argument that the discrepancy in the trial testimony shows that "it was likely any identification of either victim made was inherently unreliable" invites the exact type of "distorting effects of hindsight" that the Supreme Court has warned against. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). The discrepancy in Velma Williams's and Raymona Williams's descriptions of the assailant occurred at trial and, thus, cannot inform the trial counsel's decision to request or not to request a pre-trial *Wade* hearing. Moreover, even if the victims testified incorrectly about some of their assailant's physical features at his trial almost two years after the carjacking, the victims were able to identify Petitioner's photograph the day after the crime occurred. *Strauss*, 2011 WL 2314710, at *1. Without more, the discrepancy does not prove that not having a *Wade* hearing is so unreasonable that Petitioner is deprived of his right to counsel guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687.

Consequently, the state court's analysis of trial counsel's representation was not contrary to or an unreasonable application of clearly established federal law. Habeas relief is thus denied.

### C. Certificate of Appealability

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local App. R. 22.1. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of denial of a constitutional right, and this Court will not issue a certificate of appealability.

## IV. Conclusion

For the reasons discussed above, Petitioner's habeas petition is denied, and a certificate of appealability is denied. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**